### UNITED STATES v. MOORER.
### No. 7623.

Circuit Court of Appeals, Fifth Circuit.
May 15, 1935

Armistead L. Boothe, Atty., Dept. of Justice, of Washington, D. C., Wilbur C. Pickett and Fendall Marbury, Sp. Assts. to the Atty. Gen., and Alex C. Birch, U. S. Atty., and J. E. Meredith, Asst. U. S. Atty., both of Mobile, Ala.

Robert T. Ervin, Jr., of Mobile, Ala., and Hubert M. Hall, of Bay Minette, Ala., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Moorer was raised on a farm, but began service as a soldier in 1914 and went to France in 1917. He was discharged from the Army May 19, 1919, and has paid no insurance premiums since. He sued on his war risk policy in June, 1932, claiming total and permanent disability at and since the date of his discharge. On the first trial the jury found against him, but a new trial was granted by the judge on affidavits of the jurors that they had misunderstood the charge. On the second trial the judge refused to direct a verdict for the United States, and the jury found one for Moorer. None of the assignments of error need be considered save the refusal to direct a verdict, for we think that one well taken.

Moorer was a cook in the Army, and was not rated as a soldier otherwise. At Chateau Thierry in 1918 a shell destroyed his kitchen and a piece of the skull on the back of his head was nicked out, but the indentation did not extend entirely through. He was absent from his company several weeks afterwards, but there is no hospital record. He was also gassed in 1918. He went with his company to Germany as part of the Army of Occupation. His discharge states that his condition was good and that he had no wounds received in service. At that time he signed a questionnaire stating that he had no injury, disease, or disability, and the Army surgeon examining him stated he had no disability. On November 23, 1921, Moorer under oath applied for compensation, stating as his sole disability weak lungs from being gassed, for which he had not been hospitalized; that since his discharge he had been farming for himself; that his father and mother were dependent on him; and that he had taken out war risk

insurance with his mother as beneficiary. On examination no lung trouble or vocational handicap was found, but only infected tonsils and bad pyorrhea. Again on February 28, 1928, he applied for compensation and vocational training, stating on oath that his then disability was "mental disorder, T. B., injured back, disability almost total." He stated he was farming for himself, and that his mother and father were partly dependent on him. He again stated that he had taken war risk insurance with his mother as beneficiary. The mother also made oath to the truth of this application. He made a further affidavit that he was then farming with his brother, working about one-fourth of the time. In February, 1931, Moorer was examined at the Marine Hospital in Mobile. The complaints then made were of rheumatism in the back and joints, pus from the ear at times, occasional unconscious spells, three in all, said to be epileptic. The report made was that Moorer was ignorant but not pathologically defective. No mental disease was found, lungs normal, chronic tonsilitis, mild deafness in one ear. It will thus be noticed that Moorer and his mother were aware all the time of his insurance, and that no claim of total and permanent disability was ever made to the United States nor facts indicating it until in 1932, just prior to this suit. He has a heavy task under these circumstances and after such a lapse of time to show that he in fact was in May, 1919, and ever since, totally and permanently disabled. Moorer testified intelligently and at length, admitting that after his discharge he milked cows and did light farm work, but could not hold out to plow long. He had pains at night and difficulty in breathing, which have gotten worse in later years. Several physicians testified for him that he was "abnormal" mentally, perhaps shell-shocked, had severe pneumonia and pleurisy in 1927, and they did not think he could or should do hard work. Some of them thought the pleurisy was connected with his being gassed, but none had examined him or treated him before 1927. Their testimony does not show total and permanent disability in May, 1919.

Neighbors and relatives testified to his increased nervousness since the war; to less sociability and to his inability to do hard work for long because of shortness of breath and pain in the chest, but they all say that he can do light work, goes hunting, cuts wood, plows and hoes a few hours at a time. He and his brother, who is a cripple, have for many years cultivated from twenty to twenty-five acres of land together, making about two bales of cotton each with feed crops. Some say Moorer can plow and hoe all day at times, and that he makes about a half hand on the average. His father and mother have never gotten on well together, and Moorer has had several violent encounters with his father reaching back before the war. Other conduct indicating mental peculiarity is testified to. We are convinced that, taken as a whole, the evidence does not clearly show, as under the circumstances it should, that Moorer was totally and permanently disabled in May, 1919, and should have been drawing insurance payments all these years. The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.